NIMMONS, Judge.
Appellant Standard Distributing Company (Standard) appeals two administrative orders issued by appellee Department of Business Regulation (DBR). Finding the orders clearly erroneous, we reverse.
Standard is a liquor distributor and was the exclusive distributor of Colony Wines and Heublein products. Heublein Inc., was the manufacturer supplying Standard. On September 28, 1983, ISC Wines of California (ISC) acquired the assets of Heublein. By letter of that same date, ISC withdrew Standard’s distributorship and terminated shipments to Standard. This withdrawal of brands, made with no notice to Department of Business Regulation, Division of Alcoholic Beverages and Tobacco (the Division), was in direct contravention of the provisions of Chapters 564 and 565, Florida Statutes.
Distributors of liquor and wine, such as Standard, are protected by §§ 564.-045(5) and 565.095(5) from manufacturers’ arbitrary acts of withdrawing brands or labels. These provisions prohibit the withdrawal of any brand or label from an existing distributor without approval from the Division. These sections also provide that a distributor may petition DBR for a declaratory statement if the distributor objects to the withdrawal of a brand or label. Standard filed such a petition in October, 1983, alleging that ISC had failed to comply with the notice provisions of the statute *218 and that ISC had failed to show good cause for withdrawal as required by the statute. Thereupon, DBR issued a show cause order to ISC to determine why there had been no compliance with § 565.095(5). ISC replied to the show cause order asserting that it was not a manufacturer under the statute and therefore was not subject to the withdrawal provisions of Chapter 565 and that Standard’s distributorship agreement was in existence prior to the effective date of the statute so that the statute had no application to Standard. Standard moved for a final order and for sanctions.
Subsequently, DBR issued an order stating that there would be no formal or evi-dentiary hearing and that the proceeding would be limited to the following issues: (1) jurisdiction of the Division of Alcoholic Beverages; and (2) whether the sale from Heublein to ISC constituted good cause for withdrawal of Standard as a distributor. DBR requested the parties to submit legal memoranda by January 15, 1984. ISC filed such a memorandum. Standard, however, filed a motion to amend its petition to include additional facts and also filed a motion to stay.
ISC’s memorandum of law urged justification for brand withdrawal on the basis that ISC was entitled to terminate a distributor for business reasons and that ISC’s decision to terminate appellant for business reasons was synonymous with statutory good cause. The memorandum never announced what business reasons formed the basis of ISC’s decision to terminate Standard.
Thereafter, on March 6, 1984, DBR issued two orders. The first order denied Standard’s motion for leave to amend. The second order determined four issues, two of which are not contested on appeal. The two uneontested determinations are: (1) that the Division had jurisdiction; and (2) that ISC was required to show cause for withdrawing brands from distribution. DBR also decided that no formal hearing was to be held. Finally, and most significantly, DBR held that, “the arms length purchase of a product line by a successor will be viewed as good cause by the Division ... unless it can be shown that the sale of such products and the appointment of new distributor(s) by owner was merely a vehicle to circumvent the [statutes]....” This order equates an arm’s length sale with good cause. In so doing, the order, in effect, exempts successor manufacturers from application of the statute. As such, the order collides with this court’s earlier decision in Somerset Importers, Ltd. v. Department of Business Regulation, 428 So.2d 679 (Fla. 1st DCA 1983).
In Somerset, DBR’s finding that the statute applied to a successor manufacturer was appealed. Implicit in this court’s finding in Somerset that § 565.095(5) applies to a successor manufacturer is that more than a mere showing of an arm’s length transfer is required to establish good cause.
[T]he statute controls the withdrawal of a registered brand or label from any distributor, and is not limited to withdrawal by a manufacturer which has previously sold that brand. The ... agency therefore correctly found that, under the statutory terms, good cause must be shown before the Appleton brand or label may be withdrawn by appellant. If the legislature had intended to exempt labels in distribution under a predecessor manufacturer it could have done so. We will not infer such an intent....
Id. at 680.
We find DBR’s decision to be not only in contravention of Somerset but also contrary to the plain meaning of the statute which provides that no brand may be withdrawn “unless good cause for its withdrawal is shown by the manufacturer.” §§ 564.045(5) and 565.095(5). The statute requires an affirmative showing of good cause. It does not contemplate that the distributor who is threatened with withdrawal by the manufacturer must prove lack of good cause. Nor does the statute contemplate that mere status as a successor in an arm’s length transaction constitutes good cause. In order to terminate a distributor under §§ 564.045(5) or 565.-095(5), a manufacturer or successor manu *219 facturer must first demonstrate good cause. Good cause may be determined by the actions of the distributor, and the manufacturer carries the burden of proving such acts.
In its memorandum of law submitted to DBR, ISC stated that its decision to appoint other distributors of its own choice was made for “business reasons” which ISC characterized as synonymous with good cause.[1] While business reasons may be grounds for termination, ISC failed to establish any such business reasons. The record of the proceedings below contains nothing more than bare assertions that ISC was entitled to terminate Standard. DBR erred in failing to hold an evidentiary hearing in order to find facts and to determine whether, on the basis of the evidence adduced, the brands were withdrawn from Standard for good cause. Although under Rule 7-3.01, F.A.C., DBR has discretion to decide whether to hold a hearing, it was an abuse of discretion not to hold a hearing in this case where fact-finding was essential for a determination that good cause existed.
Inasmuch as this court is reversing DBR’s decision not to hold a hearing and inasmuch as the denial of Southern’s motion for leave to amend was predicated on the Department’s decision not to hold an evidentiary hearing, the order denying the motion for leave to amend is also reversed.
The order finding that good cause had been shown and denying a hearing is reversed and remanded for hearing and further proceedings consistent with this opinion.[2]
MILLS, J., and PEARSON, TILLMAN (Ret.), Associate Judge, concur.

. Appellees erroneously relied upon a provision of Emergency Rule 7A-4.57 which provided that good cause should be based upon "acceptable and reasonable trade practices.” This emergency rule, which was promulgated in 1978, expired 90 days thereafter and, of course, therefore has no applicability in the instant case. The present Rule 7A-4.57 was not effective until December 24, 1984, and is therefore also inapplicable.

. In reversing DBR's orders, we also note that the statute provides that withdrawal of a brand or label is permitted only if written notice is sent by certified mail to the division prior to withdrawal. This requirement was never met in this case, and DBR took no action against ISC for its failure to comply with this preliminary requirement. As Standard has not raised this as an issue on appeal, it has not been necessary to rule on the propriety of DBR’s inaction in this regard.